### THANNISH v. BREWTON TRANSFER & AUTO CO. (No. 9232.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 28, 1920. Rehearing Denied April 3, 1920.)

Corporations ⬡79—Contract for compensation for procuring stock subscribers not invalid.

Agreement by corporation to pay plaintiff 10 per cent. of the subscriptions obtained to the capital stock *held* not invalid, as in violation of Gen. & Sp. Laws 33d Leg. 1st Called Sess. (1913) c. 32 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1174a–1174p), relating to the validity of promotion contracts; there being no showing that the amounts were to be paid out of sums received from the subscribers, this conclusion being strengthened by the fact that plaintiff, when receiving payments in cash, did not deduct the amounts claimed.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by Roy A. Thannish against the Brewton Transfer & Auto Company. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

Chas. T. Rowland and Marvin H. Brown, both of Ft. Worth, for appellant.

Slay, Simon & Smith, of Ft. Worth, for appellee.

CONNER, C. J. The appellant instituted this suit against the appellee company, a private corporation organized to engage in the garage and auto business, to recover certain commissions for the sale of stock in the company. The plaintiff alleged that the contract was made with R. J. Brewton, the president and general manager of the corporation, who, in making the contract, was acting for and in behalf of the corporation. As alleged, Brewton agreed to give the plaintiff 10 per cent. of all capital stock sold, and by an exhibit to the petition, stating names and amount, it appears that some $8,000 of the original capital was sold. It was further alleged that at a later date the same officer of the company entered into a like contract for the sale of stock for the purpose of increasing the capitalization of the company, and that, as shown by an exhibit specifying names and amounts, he had sold $15,000 worth of stock under his second contract. Certain credits were admitted, and plaintiff prayed for the recovery of a balance of $1,862.50. Other allegations were made, but we do not deem it necessary to further notice the plaintiff's pleading.

The defendant interposed the usual demurrer and general denial, and specially denied that Brewton was authorized to make any such contract as specified by plaintiff, and further specially pleaded that the contract was in violation of an act of the Legislature approved August 21, 1913, and to be found in chapter 3a, art. 1174a, V. S. Tex. Civ. Stats.

The case was submitted upon a single special issue, to wit:

"After R. J. Brewton made a contract with plaintiff, Thannish, to sell the capital stock of the corporation, did the corporation, by and through its board of directors, after acquiring full knowledge of said contract, if any, adopt the said contract as the contract of the corporation? Answer 'Yes' or 'No.' "

Answer: "Yes."

Our attention has not been called to any request for a further finding by either party, but each party to the litigation moved the court to enter judgment in his favor. The court rendered judgment for the defendant, from which the plaintiff has duly appealed.

By appropriate assignments, the appellant insists that he was entitled to judgment upon the verdict of the jury, to which the appellee replies that the undisputed evidence shows that the contracts which formed the basis of plaintiff's suit were in violation of the act of the Legislature, and that therefore the finding in appellant's favor that the contract had been ratified by the corporation was wholly immaterial.

The legislative act thus brought to our attention may be found in the General and Special Laws of the 33d Legislature at its first called session in July, 1913, at page 66 (Vernon's Sayles' Ann. Civ. St. 1914, arts 1174a–1174p). The act is quite lengthy, and we shall not undertake to set it out. We will, however, quote such parts as will, we think, illustrate our conclusions thereon, and leave the reader to refer to the act for its full terms. Section 1 reads:

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Every private corporation, foreign or domestic, organized for profit, which is now attempting or shall hereafter attempt to increase its capital stock, and every proposed corporation attempted to be organized which shall, directly or indirectly, through itself, its agents or employés, or through any person or association of persons, holding companies, sales companies or otherwise, or through any other agents, sell or contract to sell any stock of such corporation or proposed corporation, upon which sale or proposed sale or contract of sale any part of the proceeds derived or to be derived therefrom are used or to be used, directly or indirectly for the payment of any commission, promotion, organization fee or other expenses incident, directly or indirectly, to the sale of its shares of stock, except attorney's fees, charter fees, franchise tax, permit fees and stationery and supplies, shall be subject to the provisions of this act."

Section 2 declares that that act shall apply to mining, oil or gas corporations, and section 3 prescribes certain regulations, such as that corporations, such as mentioned in section 2, or those promoting or having charge of the sale of stock of any "proposed corporation" shall file, under oath, in the office of the secretary of state, a statement in detail of the plan upon which the corporation proposes to increase its capital stock, or upon which the promoters or those having charge of the sale of stock of any proposed corporation proposes to sell its stock and organize the corporation, together with a copy of all the forms of contracts, stock to be used, etc., including a statement of "the price at which the stock is proposed to be sold," and the—

"commission, promotion fee and other estimated incidental expenses proposed to be charged for the organization of such proposed corporation, or the increase in the capital stock of any corporation already organized, and how the commissions or fees are to be paid."

Section 4 of the act provides that if the secretary of state, upon the receipt of the information as provided for in section 3, shall grant a permit for the sale of stock, if convinced that it will be fairly and honestly conducted, and—

"provided that the commissions, promotion and other incidental expenses, exclusive of the exempted expenses mentioned in section 1 of this act shall not be more than fifteen (15) per cent. of the price at which such stock is to be sold as shown by the application or amended application."

Section 4 further provides that—

"The commission or promotion fee shall be paid to the agent or promoter as the stock is sold by him and paid for by the purchaser. The stock shall be considered as paid for when paid for in cash, property or labor."

The section further provides that no permit shall be granted unless there shall appear on the subscription lists and contracts of such corporation or proposed corporation, in bold type, the amount of the commissions, promotion fees, and the interest which the officer, agent, employer, or promoter selling or contracting to sell such stock has in such sale. The act further provides that it shall be unlawful for any officer, agent, or employé to sell or offer to sell or contract to sell any stock of a corporation, or proposed corporation, subject to the act, without complying with the provisions of the act, and any person so offending shall be guilty of a misdemeanor, etc.

Without stopping to trace the limitation of the doctrine that a corporation cannot by ratification legalize or give vital force to a contract or act forbidden by law, we have arrived at the conclusion that the act of the Legislature under consideration, and invoked by the appellee, has no application to the circumstances of this case. By section 1 of the act it appears to be limited to corporations or proposed corporations which in the sale of their stock desire to use any part of the proceeds thereof for the payment of commissions, promotion fees, etc. This view is emphasized by the further provisions requiring a statement to be filed with the secretary of state to show the price at which the stock is proposed to be sold, the amount of commissions to be allowed, and that such commissions shall not exceed 15 per cent. of the sales. The contract, as declared upon in this case, is thus stated in the testimony of appellant:

"I had an oral contract with R. J. Brewton with reference to that matter [the sale of stock]; he wanted me to help him get a subscription list upon his business there, and he said he would pay me 10 per cent. of the subscription list, and I went out to my friends around and helped him to get this matter straightened out by this subscription list."

The terms of the contract as thus stated are not questioned. This was in July, 1917, and plaintiff's evidence tends to show that at that time the appellee corporation had already been duly incorporated. There is an entire failure on the part of the contract to provide for the payment of the commissions out of the sale of stock, and this evidently was not contemplated, for the reason that the evidence shows that the appellant collected much, if not all, of the stock subscriptions secured by him in money, and that such moneys were delivered to and have been used by the appellee corporation. Had it been understood at the time of appellant's employment that he was to receive his commissions out of the cash subscriptions secured by him, no reason appears why such deductions were not made. It is hardly reasonable to assume that appellant, under the terms of his contract, had the right to deduct his commissions out of the cash received by him, but failed to do so, thus necessitating the institution of this suit, or giving occasion for the payment by

the appellee corporation of the several sums allowed by the plaintiff as credits.

Moreover, it is to be observed that this is not a suit by the corporation against the subscriber, resisting payment of his subscription, nor yet a suit by a subscriber seeking delivery of stock in accordance with the terms of his subscription. In either case, the basis of recovery would necessarily be the contract for the sale of stock, and if the contract was one forbidden by law the court, of course, would refuse to enforce it. But the contract under consideration is not one for the sale of stock, but one for the payment of commissions in performing service in securing subscriptions for stock, and we find nothing in the act of the Legislature invoked which inhibits the making of such contracts where, as here, the contract on its face does not specify that it shall be performed in the manner inhibited by the legislative act.

It follows, we think, that the only material issue in defense presented in the evidence was that of the ratification vel non of the contract made by appellant with Brewton, and this issue was determined in appellant's favor. We accordingly think the court erred in giving the peremptory instruction to the jury in appellee's favor. The judgment should have been for appellant, rather than for appellee; it being well settled that a judgment must follow the verdict where special issues are submitted.

It is accordingly ordered that the judgment below be reversed, and here rendered in appellant's favor.